UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JEAN FRAZIER,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>FARMERS MUTUAL INSURANCE<br>COMPANY OF NEBRASKA,<br>　　　　　　Defendant. | 4:19-CV-04132-LLP<br><br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION TO COMPEL<br><br>DOCKET NO. 10 |

## INTRODUCTION

This matter is before the court on plaintiff Jean Frazier's complaint alleging breach of contract and bad faith denial of insurance benefits against her home insurer, defendant Farmers Mutual Insurance Company of Nebraska ("Farmers").  See Docket No. 1.  Jurisdiction is premised on the diverse citizenship of the parties and an amount in controversy in excess of $75,000. See 28 U.S.C. § 1332.  Now pending is plaintiff's motion to compel defendant to provide discovery responses.  See Docket No. 10.  The district court, the Honorable Lawrence L. Piersol, referred the motion to this magistrate judge for determination.  See Docket No. 20.

## FACTS

Because issues are raised regarding proportionality and relevancy, the court provides the following facts to provide context for the legal discussion.

Much of this contextual matter is drawn from the complaint, but the reader should infer no stamp of verity on the part of the court as to these facts. This case is young, and discovery has not yet been extensively explored.

A storm came through Yankton, South Dakota, where Ms. Frazier lives on March 14, 2019. The roof on Ms. Frazier's house sustained damage as a result of the storm, a fact not in dispute. The extent of the damage and the correct way to repair it are hotly contested issues.

Chris Stamm, an adjustor employed by Farmers, inspected Ms. Frazier's roof on April 5, 2019. Mr. Stamm verified there was some shingle damage, but estimated the cost to repair it was less than the $1,500 deductible on Ms. Frazier's insurance policy, so Farmers did not offer to pay Ms. Frazier any benefits under her homeowner's insurance policy.

Ms. Frazier hired H & H Roofing ("H & H") to inspect her roof and H & H came to the conclusion her entire roof had to be replaced as a result of the storm damage at a cost of $9,800. In addition to the damage previously noted by Mr. Stamm when he inspected, H & H found many shingles had been lifted and were no longer adhered and that the felt underneath some of these loosened shingles was torn. Ms. Frazier relayed this information along with H & H's repair estimate to Farmers.

On May 9, 2019, Farmers hired Trent Nelson of Apex Structural Design ("Apex") to reinspect Ms. Frazier's roof. Apex also confirmed there was storm damage. Apex acknowledged that some of the shingles had been loosened, but because they were not creased or broken off, they did not constitute "functional

2

damage" and would not be considered compensable damage under
Ms. Frazier's homeowner's policy.

Ms. Frazier asserts her insurance policy with Farmers does not contain
any limitation based on a "functional damage" distinction.  Farmers alleged a
partial repair could be completed on Ms. Frazier's roof at a cost of $2,868.43,
but then Farmers depreciated the cost of labor and the cost of debris removal
on the repair estimate and arrived at a cost of $1,318.72 to repair Ms. Frazier's
roof.  Because that cost of repair (reduced by depreciation of labor and debris
removal) was lower than the $1,500 deductible on Ms. Frazier's insurance
policy, Farmers continued to refuse any payment under the policy.

At Ms. Frazier's behest, H & H wrote a letter to Farmers explaining why,
in its opinion, a partial repair could not be completed but a full replacement of
the roof was necessary.  This letter did not change Farmers position that it
owed Ms. Frazier no benefits under her policy.

Ms. Frazier's roof is still unrepaired and continues to leak into her home,
despite efforts to institute temporary measures to prevent leakage.  She alleges
mold is growing, despite her best efforts.

Ms. Frazier filed this lawsuit in federal court on July 29, 2019, alleging
claims of breach of contract and bad faith denial of insurance benefits.  In
association with these claims, Ms. Frazier asserts Farmers inserted a
functional damage requirement into her policy that did not exist in that written
contract and that Farmers wrongfully depreciated labor and cost of debris

removal in order to arrive at a repair estimate that was less than her deductible.

Ms. Frazier served Farmers with interrogatories and requests for production.  Farmers responded to those discovery requests in ways that Ms. Frazier takes issue with.  The details of the discovery requests and responses are discussed in greater detail below.  Ms. Frazier now moves the court for an order compelling Farmers to provide complete responses to her discovery requests.

## DISCUSSION

### A.    Standards Governing Discovery

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court:

> Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within the scope of discovery need not be admissible in evidence to be discoverable.

See FED. R. CIV. P. 26(b)(1).  Rule 26 contains specific limitations relative to electronic discovery and other objections to providing discovery:

> (B)    *Specific Limitations on Electronically Stored Information.*  A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue

4

burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify the conditions for the discovery.

(C)     *When Required.*  On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

(i)      the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii)     the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii)    the proposed discovery is outside the scope permitted by Rule 26(b)(1).

<u>See</u> FED. R. CIV. P. 26(b)(2)(B) and (C).

A party claiming a privilege as to requested discovery has the burden of proving the basis for the application of the privilege:

When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i)      expressly make the claim; and

(ii)     describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

<u>See</u> FED. R. CIV. P. 26(b)(5)(A).

If a party fails to respond to a proper request for discovery, or if an evasive or incomplete response is made, the party requesting the discovery is entitled to move for a motion compelling disclosure after having made a good faith effort to resolve the dispute by conferring first with the other party.  <u>See</u> FED. R. CIV. P. 37(a).

5

The scope of discovery under Rule 26(b) is extremely broad.  See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-37 (1970) (hereinafter "Wright & Miller").   The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.  To that end, either party may compel the other to disgorge whatever facts he has in his possession."  8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08, 67 S. Ct. 385, 392, 91 L. Ed. 2d 451 (1947)).  The Federal Rules distinguish between discoverability and admissibility of evidence.  FED. R. CIV. P. 26(b)(1), 32, and 33(a)(2) & (c).  Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial.  These considerations are not inherent barriers to discovery, however.

"Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings.  Relevancy . . . encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 at *1 (D. Neb. March 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required."  Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)).  "Mere speculation that information might be useful will not suffice; litigants seeking to compel

6

discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

Discoverable information itself need not be admissible at trial; rather, the defining question is whether it is within the scope of discovery. See FED. R. CIV. P. 26(b)(1). Additionally, the court may limit the frequency and extent of discovery. See FED. R. CIV. P. 26(b)(2); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

Ms. Frazier was under a duty to meet and confer with Farmers before filing this motion to attempt to resolve the parties' discovery dispute. She asserts she satisfied that duty. Farmers does not dispute that she did so. Accordingly, the motion is ripe for decision.

## B.    **Proportionality and Relevance**

As to each of Ms. Frazier's discovery requests, Farmers asserts that the discovery is not proportional to *her contract claim* and is not relevant *to her contract claim*. Farmers explains in its responses to both the discovery

requests and to Ms. Frazier's motion to compel, that it intended to file a motion to bifurcate the trial of the contract claim and the bad faith claim and to stay discovery on the bad faith claim unless and until Ms. Frazier established a breach of contract claim.

Farmers never makes the argument that the discovery sought by Ms. Frazier is irrelevant to her bad faith claim.  In fact, Farmers tacitly admits the discovery is relevant as to that claim.  With one exception (discussed below), Farmers never argues that the requested discovery is not proportional to her bad faith claim.

Farmers did in fact make a motion to bifurcate the trial and discovery on Ms. Frazier's claims.  See Docket No. 13.  The district court denied the motion. See Docket No. 24.  Accordingly, Farmers objections to Ms. Frazier's discovery requests and to her motion to compel premised on the bifurcation of her claims are overruled.

## C.    No Copies and No Contact

Another objection that was asserted as to several of the discovery requests is that plaintiff's counsel not be allowed to copy documents without Farmers' express permission and that plaintiff's counsel not be allowed to contact individuals identified in those documents.  In the parties' attempts to work out their discovery disputes before involving the court, Farmers agreed to make available for inspection certain employee files, certain claims files, and certain files of complaints made to the division of insurance.  As to these categories of documents, it agreed to allow Ms. Frazier's counsel to inspect the

requested documents at either Farmers' home office in Lincoln, Nebraska, or at Farmers' lawyers' offices in Sioux Falls, South Dakota.  But Farmers attached a condition to plaintiff's inspection:  plaintiff's counsel would not be allowed to make any copies of any documents they observed without specific permission to do so by a Farmers representative, and plaintiff's counsel would not be allowed to contact any persons who might be potential witnesses identified in those documents.

In the course of this motion to compel, Farmers never addresses these twin conditions.  It never acknowledges them at all, let alone asserts legal or factual support for them.  Ms. Frazier has, on the other hand, explained why she must be allowed to make copies and, where relevant, contact potential witnesses.  The court finds Ms. Frazier has satisfied her initial burden to demonstrate the relevancy of the discovery requested.

In this motion to compel, Farmers does assert a confidentiality issue with regard to names and contact information of its insureds and its employees' personnel files (Ms. Frazier's counsel voluntarily agreed not to contact former or current employees of Farmers without discussion of the issue with Farmers' counsel).  However, Farmers never explains how any legitimate confidentiality concerns would allow plaintiff's counsel to *view* the names and contact information of witnesses and employees as Farmers has agreed it will allow, but nevertheless prevent plaintiff's counsel from contacting any witnesses identified in the documents.

Ms. Frazier has explained she does not want any private information such as social security numbers, medical information, or account numbers and has agreed voluntarily to allow Farmers to remove this information from the files requested or to redact it.  However, Ms. Frazier maintains if the files contain information relevant or potentially relevant to her claims, she must be allowed to copy the information and, where appropriate, contact potential witnesses.

Farmers has asserted its Privacy Notice prevents it from allowing Ms. Frazier to copy or contact information of its insureds.  But Farmers' Privacy Notice tells its customers that their information will not be disclosed to others "except as permitted by law."  Here, the Federal Rules of Civil Procedure certainly constitute law that permits Farmers to disclose the concededly relevant information.

Furthermore, on October 31, 2019, the parties entered into a comprehensive confidentiality agreement.  See Docket No. 22-1.  Under the terms of that agreement, the parties agree that either party may designate information or documents as confidential.  Id.  If such a designation is made, the parties agree that information will only be used, disclosed, discussed, or inspected for purposes of this litigation by the parties, counsel, witnesses, the court, or any mediator.  Id.  When disclosure is made to anyone not a party or counsel, the third party must agree to be bound by the terms of the parties' confidentiality agreement before viewing the information.  Id.  The agreement

also provides a dispute resolution procedure in the event the parties do not agree that certain information should be designated as confidential.  Id.

In light of the parties' confidentiality agreement in this case, and in light of plaintiff's concession that Farmers may redact or remove social security numbers, medical information[1], and account numbers, the court finds there are no confidentiality concerns that are not already taken into account and reasonably provided for.  Farmers' objection to discovery based on confidentiality is overruled.

Farmers has not supported with citation to legal authority—nor even addressed—its limitation on discovery that plaintiff's counsel not be allowed to copy documents without Farmers' permission or to contact potential witnesses revealed in those documents.  Certainly, Farmers has a right to know *what* plaintiff's counsel copies, but having conceded that the files being made available are relevant, Farmers has no right to insist on another level of permission before copies are made.

## D.    Individual Discovery Requests and Objections

### 1.    Interrogatory No. 8

This interrogatory seeks identification of all weather-related property claims submitted by Farmers' insureds from January 1, 2014, to the present where Farmers rejected the claim by asserting the amount of the claim was less

---

[1] There would be no medical information in the files of the insureds because those concern only property damage claims due to weather on which Farmers paid no benefits because it deemed the amount of damage to be less than the insured's deductible.  But medical information might be contained in personnel files of Farmers employees.

11

than the insured's policy deductible.  Farmers has now agreed pursuant to
FED. R. CIV. P. 33(d) to make the files pertaining to South Dakota claims which
are responsive to the interrogatory available in Lincoln for plaintiff's counsel to
review there.[2]  Plaintiff's counsel is happy to proceed in this fashion, reserving
their right to ask for files from Nebraska[3] in later discovery if counsel believes
such discovery would potentially reveal relevant information.  There is no
further objection to this discovery request.  Ms. Frazier's motion to compel is
granted as to interrogatory number 8 in conformity with the parties' agreed
upon compromise.

### 2.    Requests for Production No. 6 & 7

In these discovery requests Ms. Frazer seeks documents relating to
market conduct examinations and consumer complaints submitted to the state
division of insurance.  The objections Farmers asserts to these requests are
proportionality based on the contract claim alone, relevancy based on the
contract claim alone, and confidentiality.  Each of those objections is analyzed
and overruled above.  Additionally, the court fails to see confidentiality
applying to the market conduct exams and the consumer complaints.  By
definition, these discovery requests seek information that has been created by

---

[2] Farmers asserted in its brief that it would take its employees a great number
of hours to sift through these files and identify relevant information.  That
argument is mooted by Farmers' offer to let plaintiff's counsel sift through the
information.

[3] Farmers only sells property insurance in Nebraska and South Dakota, so any
future discovery on this subject could only expand to include the one
additional state of Nebraska.

or shared with a state agency.  As such, the court does not see confidentiality entering into the analysis.  Farmers does not explain how information that has already been shared with a third party can be considered confidential.

Finally, Farmers has agreed to produce for inspection in Sioux Falls all consumer complaints against it filed with the South Dakota Division of Insurance.  Plaintiff's counsel are agreeable to this initial compromise while reserving their right to ask for discovery of consumer complaints filed against Farmers in Nebraska at a later date if appropriate.  There are no further objections with regard to this discovery.  The court grants Ms. Frazier's motion to compel discovery with regard to requests for production no. 6 & 7 as modified by the parties' agreed compromise.

### 3.    Request for Production No. 4

This discovery request asked for personnel files of Farmers employee Chris Stamm and every employee up the chain of command from Mr. Stamm up to and including the head of the claims department.  Farmers agreed to produce for inspection the personnel files of Mr. Stamm, Todd Ljunggren, Todd Lane and Steve Hostert, which apparently represents an unbroken chain of command from Mr. Stamm up through Mr. Hostert.  However, there are two additional employees, Kris Filipi and Aaron Glause, whose personnel files Farmers does not agree to produce.  Farmers maintains that Mr. Filipi and Mr. Glause never handled any part of Ms. Frazier's claims file.  Farmers asserts this discovery is not relevant to Ms. Frazier's contract claim.  It does not make a relevancy objection based on Ms. Frazier's bad faith claim.

13

Mr. Filipi is Steve Hostert's supervisor, and Mr. Glause, the head of the claims department, is Mr. Filipi's supervisor.  Ms. Frazier asserts that Farmers does not maintain any written training manual; instead all of its employees are trained orally by their superiors.  Farmers does not dispute this.  Under these circumstances, Ms. Frazier asserts it is highly likely that if Farmers indeed has a company-wide police of requiring "functional damage" or of depreciating labor and debris removal, that policy would not originate from employees at the bottom of the ladder, but would be a policy instituted at the topmost levels of the claims department.  Furthermore, the absence of any written training manual leads Ms. Frazier to the conclusion that personnel files of the highest level managers in the claims department likely reflect the institution of the policy, if one exists.

The court finds Ms. Frazier has carried her burden to demonstrate initial relevancy of the discovery requested.  Farmers has not shown the discovery is irrelevant to her bad faith claims or that production is overly broad or unduly burdensome.  Although Farmers asserts an objection based on confidentiality, it never explains why lower level personnel files are not subject to confidentiality concerns while personnel files of higher level employees are.  In any event, the court has addressed the confidentiality objection above and overruled it.  Farmers is ordered to provide for inspection the personnel files of Mr. Filipi and Mr. Glause, said production to be made consistent with the parties' confidentiality agreement and Ms. Frazier's offer to allow redaction of sensitive medical, social security, or account number information.

### 4.    Requests for Production No. 8 & 17

These discovery requests seek copies of any claims files where Chris Stamm or Apex investigated a claim for Farmers.  The request for Mr. Stamm is for the last five years' worth of claims files.  The request for Apex is for all files from June 1, 2014, up to the date of trial in this matter.  The discovery requests specify that Farmers may redact or withhold any social security numbers, health or life insurance information, bank or credit card numbers, or financial account numbers of any person.

Farmers objects to these discovery requests on the grounds that they are not relevant or proportional to Ms. Frazier's *contract* claim and that they call for confidential information.  These objections are discussed and overruled above.

As to the bad faith claim, Farmers asserts that the discovery sought is only relevant to Ms. Frazier's claim for punitive damages.  Because Farmers asserts punitive damages should be based only on a defendant's activities in the plaintiff's home state, Farmers asserts that the production of documents pursuant to these discovery requests should be limited to claims involving South Dakota insureds.

When the parties met and conferred prior to Ms. Frazier filing the instant motion to compel, her counsel agreed for now to accept discovery limited to claims files associated with South Dakota insureds, reserving their right to ask for claims files of Nebraska insureds at a later date if warranted.

Ms. Frazier identifies 28 claims files produced by Farmers.  However, all information about the insureds has been redacted by Farmers from these files.

15

Ms. Frazier asks the court to order Farmers to produce these 28 claims files with the names and contact information of the insureds unredacted.  See Docket No. 11 at n.20 for complete list of the 28 claims numbers.  In its response to Ms. Frazier's motion to compel, Farmers does not specifically address the redactions of the claims files other than to generally assert confidentiality.

Plaintiff has shown the initial relevancy of this discovery.  Farmers has failed to assert a valid objection, demonstrate lack of relevancy, or assert a privilege.  Accordingly, the court grants plaintiff's motion to compel as to these discovery requests, as modified by the parties' agreement.

## CONCLUSION

Based on the foregoing facts, law and analysis, the court hereby

ORDERS that the motion to compel [Docket No. 10] filed by plaintiff Jean Frazier is granted in its entirety.  Defendant Farmers Mutual Insurance Company of Nebraska shall provide, within 15 days of the date of this order, discovery responsive to plaintiff's requests as modified by the parties' agreements at the meet-and-confer discussion.

DATED June 5, 2020.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge

16